IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| ANGELICA IATONNA, ) | CASE NO. 5:11 CV 2806 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
     A.    Decision of the Administrative Law Judge ("ALJ") . . . . . . . . . . . . . . . . -3-
     B.    Issues on judicial review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     A.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
          1.    Substantial evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
          2.    Treating physician rule and good reasons requirement . . . . . . . . -6-
          3.    Credibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
     B.    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
          1.    Substantial evidence supports the RFC determination. . . . . . . . -15-
          2.    The ALJ provided good reasons for discounting the opinion of A.
               William Kedia, M.D., a treating physician. . . . . . . . . . . . . . . . -15-
          3.    There is no error in the ALJ's decision to discount Iatonna's credibility.
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

## Introduction

Before me[1] is an action under 42 U.S.C. §§ 405(g) and 1383(c) by Angelica Iatonna for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my initial order[5] and procedural order,[6] the parties have each briefed their positions[7] and filed supporting charts[8] and the fact sheet.[9] The parties have also participated in a telephonic oral argument.[10]

For the reasons that follow, I will find that the decision of the Commissioner is supported by substantial evidence is will, therefore, be affirmed.

---

[1] ECF # 12. The parties consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 4.

[7] ECF # 19 (Iatonna's brief); ECF # 20 (Commissioner's brief).

[8] ECF # 19, Attachment 1 (Iatonna's charts); ECF # 20, Attachment 1 (Commissioner's charts).

[9] ECF # 13 (Iatonna's fact sheet).

[10] ECF # 22.

**Facts**

**A.    Decision of the Administrative Law Judge ("ALJ")**

Iatonna, who was born in 1977, completed high school and attended three years of college.[11] Her past relevant work was as a general clerk, which the vocational expert ("VE") testified was semi-skilled work that requires up to three months of training to learn.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Iatonna had severe impairments consisting of diabetes mellitus, with mild peripheral neuropathy and diabetic retinopathy, and obesity.[13] After determining that these severe impairments did not meet or equal any listing,[14] the ALJ made the following finding regarding Iatonna's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except limited to lifting or carrying only 20 lbs occasionally and 10 lbs frequently; stand and walk for a total of 6 hours each per day, with breaks, 2 hours at a time each continuously; sit for up to six hours per day; must have the ability to sit or stand at will; occasional stair climbing; no scaffolds, ropes or ladders; occasional balancing; frequent stooping, kneeling, crouching and crawling; must avoid all moving machinery; must avoid exposure to unprotected heights; and limited to occupations that do not require depth perception..[15]

---

[11] ECF # 13 at 1 (citing transcript).

[12] Transcript ("Tr.") at 26.

[13] *Id*. at 17.

[14] *Id*. at 21.

[15] *Id.* at 22.

Given that residual functional capacity, the ALJ, with the assistance of testimony from the VE, concluded that Iatonna was capable of her past relevant work as a general clerk[16] and, therefore, not under a disability.[17]

**B.    Issues on judicial review**

Iatonna asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Iatonna raises three arguments

- Whether the ALJ's residual functional capacity determination of a reduced range of light work activity is supported by substantial evidence given plaintiff's severe peripheral neuropathy, chronic foot, ankle, and leg pain, and obesity.

- Whether the ALJ provided good reasons, supported by substantial evidence, for the assignment of no weight to the opinion of Dr. Kedia, plaintiff's treating physician.

- Whether the ALJ's analysis of pain was premised upon the appropriate legal standard and supported by substantial evidence.[18]

---

[16] *Id*. at 26.

[17] *Id.* at 27.

[18] ECF # 19 at 1.

## Analysis

**A.     Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

---

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given

---

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[38] Second, the ALJ must identify for the record evidence supporting that finding." [39] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[40]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[41] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[42] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[43] or that objective medical evidence does not support that opinion.[44]

---

[38] *Wilson*, 378 F.3d at 546.

[39] *Id.*

[40] *Id.*

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[44] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[45] The Commissioner's *post hoc* arguments on judicial review are immaterial.[46]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[47]

- the rejection or discounting of the weight of a treating source without assigning weight,[48]

---

[45] *Blakley*, 581 F.3d at 407.

[46] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[47] *Blakley*, 581 F.3d at 407-08.

[48] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[49]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[50]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[51] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[52]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[53] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[54] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[55]

---

[49] *Id.*

[50] *Id.* at 409.

[51] *Hensley*, 573 F.3d at 266-67.

[52] *Friend*, 375 F. App'x at 551-52.

[53] *Blakley*, 581 F.3d 399.

[54] *Id*. at 409-10.

[55] *Id*. at 410.

In *Cole v. Astrue*,[56] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[57]

*3.     Credibility*

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[58]

The Social Security Administration has recognized by policy interpretation ruling and regulation that, even in the absence of such objective medical evidence, a claimant may experience pain severe enough to impose limitations on the capacity for work.[59]  In such cases, the ALJ must evaluate the credibility of the claimant's allegations of pain and pain-induced limitations.[60]

---

[56] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[57] *Id.* at 940.

[58] *Swain*, 297 F. Supp. 2d at 988-89.

[59] *Id.* at 989, quoting Soc. Sec. Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34484 (July 2, 1996), and 20 C.F.R. § 416.929(c)(2).

[60] *Id.*

The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[61]  A court may not disturb the ALJ's credibility determination absent compelling reason.[62]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[63]  If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[64]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence." [65]  Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

---

[61] *Buxton*, 246 F.3d at 773.

[62] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[63] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[64] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[65] 20 C.F.R. § 404.1529(c)(3).

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence. The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.

Unlike the requirement that the ALJ state good cause for discounting the opinion of a treating source, the regulation on evaluating a claimant's subjective complaints contains no express articulation requirement. The obligation that the ALJ state reasons for rejecting a claimant's complaints as less than credible appears to have its origin in case law.[66] The Social Security Administration has recognized the need for articulation of reasons for discounting a claimant's credibility in a policy interpretation ruling.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[67]

---

[66] *Felisky*, 35 F.3d at 1036; *Auer v. Sec. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

[67] SSR 96-7p, 61 Fed. Reg. at 34484.

**B.     Application of standards**

*1.    Substantial evidence supports the RFC determination.*

As was made clear during the oral argument, Iatonna's objections to the RFC center on the ALJ's treatment of Dr. Kedia's opinion and his decision to find Iatonna's complaints less than fully credible. Thus, as will be more fully explained below, if the decisions of the ALJ in these two respects are proper, the RFC will be supported by substantial evidence and so affirmed.

*2.    The ALJ provided good reasons for discounting the opinion of A. William Kedia, M.D., a treating physician.*

Dr. Kedia, a family practice physician, completed a medical source statement in 2009 indicating that Iatonna needed various exertional, postural, and environmental limitations, including an at-will sit/stand option.[68] Although acknowledging that Dr. Kedia was a treating source, the ALJ gave Dr. Kedia's opinion no weight.[69] As reasons for this decision, the ALJ stated initially that Dr. Kedia's opinion, "is simply not supported by the medical evidence on file."[70] As additional reasons, the ALJ observed that Dr. Kedia's opinion "is outweighed by a number of other opinions" from other physicians and is inconsistent with evidence in the record of Iatonna's activities.[71]

---

[68] Tr. at 365-66.

[69] *Id.* at 26.

[70] *Id.*

[71] *Id.*

-15-

On the first point, the lack of medical evidence to support Dr. Kedia's limitations, the Commissioner argues that Dr. Kedia, "did not cite specific medical evidence or clinical findings" to support his 2009 opinion on functional limitations, choosing instead to cite simply "peripheral neuropathy" and "poor vision."[72] A review of the medical evidence on file as to Iatonna's vision, however, shows multiple sources for establishing that Iatonna's vision was poor[73] and that she had numerous clinical tests to show she was suffering from moderately severe polyneuropathy likely due to her diabetes.[74] Thus, the relevant inquiry has to be restricted to how these demonstrable impairments affect function.

The second basis for discounting Dr. Kedia's functional opinion – that it was "outweighed" by other physician opinions – raises as a predicate matter what other opinions were being weighed against that of Dr. Kedia. Of those opinions specifically listed by the ALJ, only Selwyn-Lloyd McPherson, M.D. is also a treating source, and so entitled to be treated the same was as Dr. Kedia. Dr. McPherson, a neurologist, gave a functional opinion in 2009 that, despite bilateral diabetic retinopathy and complaints of numbness in both feet, Iatonna "is not restricted in any way" with performing sustained work activity.[75] That said,

---

[72] *Id.* at 365-66.

[73] *See*, ECF # 19 at 5-9 (citing transcript).

[74] *Id.*

[75] Tr. at 25.

-16-

the ALJ afforded this treating source opinion only "some" weight because it does not "appreciate fully the limiting nature" of Iatonna's impairments.[76]

In this regard, and in the comparison of opinions from treating sources, the ALJ does adequately set forth a good reason for giving greater credit to the opinion of Dr. McPherson over Dr. Kedia. Specifically, by here including Dr. McPherson's functional limitation opinion with those of C. Amanambu, M.D., a consultative examiner, and Paul Morton, M.D., a state reviewing physician, the ALJ carefully identified the differences in the sources and clearly assigned weight to each opinion, while making the point that collectively the medical opinion evidence – from treating, consulting, and reviewing sources – all were less restrictive than Dr. Kedia, thus providing a good reason for discounting Dr. Kedia's functional opinion.

As to the specific impairment of poor vision, the ALJ offers a very detailed explanation of why, despite having diabetic retinopathy, Iatonna's vision is "relatively well managed with corrective lenses," in addition to being addressed by the RFC set forth here.[77]

As to peripheral neuropathy, the ALJ here also discussed this impairment at length, noting that Iatonna has not attempted to treat this condition as her doctors have recommended and in a way that might reduce any functional limitation arising from this impairment.[78] Further, as with the vision issue, it appears that the ALJ made some allowance for Iatonna's

---

[76] *Id.*

[77] *Id.* at 24.

[78] *Id.*

peripheral neuropathy in the feet by placing a sit/stand option in the RFC, which only Dr. Kedia provided for.[79]

In sum, the ALJ did acknowledge Dr. Kedia's status as a treating source and gave his opinion some weight. In the face of the other opinions discussed above, which range from no limitations to medium limitations, and in light of the other factors also mentioned earlier, the ALJ, however, ultimately incorporated only light functional limitations into Iatonna's RFC. Furthermore, he incorporated the sit/stand option, which only Dr. Kedia provided for.[80] Finally, as the ALJ also extensively discussed in the opinion, Iatonna's description of her activities does betray a capability beyond that which Dr. Kedia's opinion presupposed.[81]

Thus, I find that the ALJ here complied with the treating physician rule and good reasons requirement in his treatment of the functional limitations opinion of Dr. Kedia.

### 3.     *There is no error in the ALJ's decision to discount Iatonna's credibility.*

On the credibility issue, I note first that the ALJ initially found that Iatonna's impairments could reasonably be expected to cause pain[82] and further identified the physicians' opinions, discussed above, which, as a body, demonstrate some limitations caused by that pain. As I stated in *Swain v. Commissioner of Social Security*,[83] the opinions

---

[79] ECF # 20 at 10 (citing Tr. at 22).

[80] *See*, Tr. at 366.

[81] *Id*. at 25.

[82] *Id*. at 23.

[83] *Swain*, 297 F. Supp. 2d 986.

of physicians are very probative as to the extent to which the objective medical evidence determines what pain can be expected from a given impairment.

That then presents the issue of whether the ALJ's determination as to credibility was properly done. The ALJ does provide a unified statement extensively discussing credibility.[84] In it he emphasizes noncompliance with the diabetes treatment regimen, as reported by Dr. McPherson and inconsistencies between her report of limitations and her activities.[85]

Iatonna, however, criticizes the ALJ's articulation because the unified statement does not pick up all of the factors set out in the regulations, such as effects of medicine taken for the pain and duration, frequency and intensity of the symptoms.[86]

The Commissioner acknowledges that "while the ALJ did not discuss every single factor related to credibility outlined in the regulations, his credibility finding was reasonable, based on a number of relevant factors [such as the fact that Iatonna was not following the treatment she was prescribed], and was supported by substantial evidence."[87]

I agree with the Commissioner. As was extensively outlined above, the articulation requirement for an ALJ who is finding that a claimant is not fully credible does not mandate a review of every element presented in the regulations but rather imposes a duty to present clear, reviewable reasons as to why a claimant is found less than credible with the overall

---

[84] Tr. at 24-25.

[85] *Id.*

[86] ECF # 19 at 16.

[87] ECF # 20 at 12.

objective of having such determinations not made upon general boilerplate comments such as the claimant's complaints are inconsistent with the record. Here, the ALJ engaged in a lengthy, detailed discussion of the reasons why Iatonna was found not fully credible – a discussion which sets forth the ALJ's reasoning clearly and in a form reviewable here.

Inasmuch as the reasons given do support the finding that Iatonna was not fully credible in her complaints, and since the ALJ's judgment as to credibility is not to be disturbed without "compelling" reason,[88] I find substantial evidence supports that finding here.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Iatonna had no disability. Accordingly, the decision of the Commissioner denying Iatonna disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: March 27, 2013                                    s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[88] *Smith*, 307 F.3d at 379.